UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ANGELITO UY SEPULVIDA
and MARIA BITUIN CARANAY,

Case No. 20-10063-ta13

Debtors.

## **OPINION**

Before the Court is the second fee application of Debtors' chapter 13 counsel, New Mexico Financial and Family Law, P.C. ("Counsel"). In the application, Counsel seeks allowance of $6,436.50 in professional fees, plus $272.57 in costs and New Mexico gross receipts tax. The Court previously awarded Counsel $10,323.95 in fees, costs, and tax. Because the cumulative amount sought is significantly higher than the average fee application for a chapter 13 case in this district, the Court set the matter for hearing. Having examined the basis for the requested fees, the Court will allow Counsel's them in the reduced amount of $3,000.

1. Facts.

The Court finds:[1]

In late 2018, Debtors retained Counsel to file this case, providing a $3,000 retainer. Attorneys Don Harris and Dennis Banning and paralegal Jill Stevenson worked on the case.

Counsel filed the case on January 13, 2020. The initial filings included the petition, disposable income calculation, schedules, statement of financial affairs, plan, credit counseling certificate, and attorney fee disclosure. The fee disclosure states that Counsel agreed to represent

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

Debtors in this chapter 13 case for a flat fee of $3,000. No retainer was disclosed.

Debtors' plan proposed 60 monthly payments of $1,000; proposed to pay Debtors' home mortgage "outside" the plan; and proposed to pay three car loans "inside" the plan. The Plan also proposed to pay an IRS claim for back taxes as an unsecured priority claim. In the paragraph discussing attorney fees, Debtors represented that they paid Counsel $3,000 prepetition, with no additional fees anticipated. The plan did not mention Debtor's $54,133,07 prepetition mortgage arrearage, although Counsel was aware of it.

The Debtors' § 341[2] meeting was held February 12, 2020. There, Debtors realized that their 2011 Mercedes secured a loan from TitleMax, not Bank of Albuquerque.[3] TitleMax was omitted from Debtors' initial schedules and had not received notice of the bankruptcy.

The chapter 13 trustee objected to the plan, arguing that the proposed monthly payments were insufficient, that sections of the plan form were left blank, that she needed a copy of certain tax returns, and that there was a discrepancy between Counsel's fee disclosure and the plan regarding the retainer. The trustee also asserted that TitleMax needed to be notified of the bankruptcy and addressed in the plan.

Debtors filed an amended plan on February 26, 2020. They fixed the mix-up with TitleMax and Bank of Albuquerque, proposed to pay Bank of Albuquerque "outside" the plan, and increased plan payments to $2,500 per month. The attorney fee paragraph was amended to show a $3,000 retainer and an additional $3,000 in estimated fees, for a total of $6,000 in fees through confirmation. The amended plan did not address the pre-petition mortgage arrears.

Debtors gave TitleMax notice of the bankruptcy on March 20, 2020, more than five weeks after the trustee alerted them to TitleMax's lien on the Mercedes.

---

[2] All statutory references are to 11 U.S.C. unless otherwise indicated.
[3] Bank of Albuquerque loan is secured by a certificate of deposit.

Counsel amended its disclosure of compensation on March 24, 2020. The amended disclosure still described the fee arrangement as a $3,000 flat fee, but did disclose the prepetition retainer.

The claims bar date in this case was March 23, 2020, for nongovernmental creditors. A total of $512,049.69 in claims was filed, of which $396,196.85 is secured, $5,129 is priority, and $110,723.84 is non-priority unsecured.

The Debtors' amended plan was confirmed on April 6, 2020. Counsel filed its first fee application on April 13, 2020, seeking approval of fees of $9,174.50, tax of $725.05, and expenses of $424.40—a total of $10,323.95.[4]

On May 26, 2020, Don Harris filed an affidavit in support of the fee application, stating in part: "Due to the period of time that house payments were behind pre-petition, it took a significant amount of time for counsel to work through the proof of claim and appropriate arrearage amount as the amounts and calculations were unclear." Nevertheless, the confirmed plan did not address the mortgage arrearage. The only explanation is that treatment of the mortgage arrears was omitted by mistake.

No objections were filed to the fee application, and the Court granted it on June 8, 2020.

Counsel's work for the Debtors continued post-confirmation. First, the IRS filed a proof of claim the same day the plan was confirmed.[5] On May 4, 2020, Debtors moved to modify their plan to allow for payment of the secured portion ($4,084.05) of the IRS claim. The modification was unopposed and was granted on June 11, 2020.

Second, Debtors filed a motion to modify on June 16, 2020, to correct the oversight of the

---

[4] The initial fee application is lacking. While the application is for services performed between October 29, 2019 and April 11, 2020, Counsel only included billing statements beginning in January 2020. The Court therefore does not have a full accounting of Counsel's billing in the case.
[5] The deadline for governmental units to file a timely proof of claim in this case was July 13, 2020.

prepetition mortgage arrears. In the motion, Debtors proposed to pay the $54,133.07 in arrears through the plan. No objections were filed and the motion was granted July 21, 2020.

Third, in the fall of 2020 the mortgage lender transferred the loan to Shellpoint Mortgage Servicing. Counsel communicated with Debtors frequently for about six weeks to assist with the transition. A notice of transfer was filed on the docket on November 11, 2020.

Finally, Counsel worked on TitleMax's proof of claim. Initially, the trustee objected to the claim, filed April 20, 2020, as untimely. Debtors responded with a motion to allow the late filed claim but also argued that TitleMax's secured claim amount and interest rate[6] should be treated as set forth in the confirmed plan. Debtors eventually filed their own claim objection to that effect and the trustee withdrew hers. TitleMax did not respond to Debtors' objection so the Court sustained it on November 5, 2020.

On December 2, 2020, Counsel filed its second fee application, requesting approval of fees of $6,436.50, taxes of $506.87, and costs of $272.57. The time spent and fees billed can be categorized as follows:

| Category | Attorney time | Paralegal time | Combined fees |
|---|---|---|---|
| Plan modification for IRS claim | 3.9 | 0.0 | $780.00 |
| Plan modification for mortgage arrears | 7.4 | 0.0 | $1,508.50 |
| Correspondence about change in mortgage servicers | 6.3 | 0.0 | $1,260.00 |
| Objection to TitleMax claim | 5.4 | 0.2 | $1,110.00 |
| Work on fee applications | 2.2 | 1.4 | $859.00 |
| Other correspondence; miscellany | 4.5 | 0.0 | $919.00 |
| Total | 29.7 hours | 1.6 hours | $6,436.50 |

2. <u>General Requirements for Debtor Attorney Fee Allowance in Chapter 13</u>.

---

[6] The interest rate on the TitleMax loan was 120% per annum. Counsel was able to reduce this to 5%.

Compensation of counsel for chapter 13 debtors is governed by § 330(a)(4)(B),[7] which provides:

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

This subsection was added to the bankruptcy code by the Bankruptcy Reform Act of 1994.[8]

"[A] chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) [disclosure of] compensation paid or agreed to be paid pursuant to section 329 and 2) . . . approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Rosales,* 621 B.R. 903, 922 (Bankr. D. Kan. 2020), quoting *In re Cahill,* 478 B.R. 173, 176 (Bankr. S.D.N.Y. 2012).

Compensation generally can include reimbursement of expenses advanced, e.g., filing fees, witness fees, and deposition costs. *See, e.g., In re Riley*, 923 F.3d 433, 443 (5th Cir. 2019); *In re Genatossio*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015) (§ 330(a)(4)(B) permits an award of fees and expenses); *In re Marvin*, 2010 WL 2176084 (Bankr. N.D. Iowa) (allowing reimbursement of expenses); *In re Williams*, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007) (court may award fees and expenses); *but see In re Frazier*, 569 B.R. 361, 369 (Bankr. S.D. Ga. 2017) (some expenses, but not advancement of the filing fee, can be reimbursed from the estate); *In re Marotta*, 479 B.R. 681, 689–90 (Bankr. M.D.N.C. 2012) (expenses, and specifically the filing fee, not recoverable under § 330(a)(4)(B)).

---

[7] This is true for work done pre- or post-confirmation. *See*, *e.g.*, *In re Conner*, 559 B.R. 526, 533 (Bankr. D.N.M. 2016) (awarding supplemental fees pursuant to § 330(a)).

[8] The Reform Act also deleted the language "or to the debtor's attorney" from § 330(a)(1). Until then, § 330(a)(1) had included the debtor's attorney in the list of persons who could be paid from the estate. In *Lamie v. U.S. Trustee,* 540 U.S. 526 (2004), the Supreme Court held that the Reform Act meant that debtor's counsel in a chapter 12 or 13 case could only be compensated under § 330(a)(4)(B).

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *In re Cooke,* 2020 WL 6821730, at *3 (Bankr. D. Ariz.), citing *In re Roderick Timber Co.,* 185 B.R. 601, 606 (9th Cir. BAP 1995). "This burden is not to be taken lightly given that every dollar expended on legal fees results i[n] a dollar less that is available for distribution to the creditors." *Dille*, 2021 WL 864201, at *2, citing *In re Ulrich,* 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014).

In determining the allowance of compensation under § 330(a)(4)(B), the Court considers the factors set out in § 330(a)(3). *Rosales*, 621 B.R. at 927; *In re Hunt*, 588 B.R. 496, 499 n.4 (Bankr. W.D. Mich. 2018).

3.  Determining How Much Compensation Should be Allowed.

"To be compensable, the fees must be for services that were 'actual' and 'necessary.' § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be 'reasonable.'" *In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.); *see also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005).

a.  Actual Services. Compensation can only be allowed for services actually performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered"). This is not an issue here.

b.  Necessary Services. Allowance is limited to "services [that] were necessary to the administration of, or beneficial toward the completion of a case." *In re Schupbach Investments,*

*LLC*, 521 B.R. 449, at *8 (10th Cir. BAP 2014); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same). In chapter 13 cases, the benefit can be to the debtor rather than to the estate. *In re Guajardo*, 2020 WL 4919794, at *3 (Bankr. D.N.M.); *In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) is an exception to the general rule that professionals' services must benefit the estate to be compensable); *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002) (same).

Reviewing the docket in this case and Counsel's fee bills, the Court concludes that some work was necessary in most of the categories outlined in the table above, but not all is compensable. The time Counsel spent scheduling and setting up conference calls with Debtors is clerical and cannot be compensated by the estate. For example, Counsel billed 1.1 hours at $200/hour between July 24 and 28, 2020, trying to coordinate calls to update Debtors on the case status. *See In re Guajardo*, 2020 WL 762828, at *4 (Bankr. D.N.M.) ("While necessary in every legal proceeding, clerical work cannot reasonably be passed onto clients or the estate and should instead be absorbed by the firm as overhead."); *see also In re CF&I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991) (same); *In re Lady Baltimore Foods, Inc.*, 2004 WL 2192368, at *1 (Bankr. D. Utah) (same); *In re Guzman*, 2009 WL 607401, at *1 (Bankr. D.N.M.) (same). If Counsel's attorneys do their own scheduling of client meetings, conference calls, and the like, they should not bill for it.

    c.    <u>Reasonable Compensation</u>. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the factors in § 330(a)(3) and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246–47 (10th Cir. 2013). Under § 330(a)(3) the Court must consider:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *Johnson* factors are:

(1) The time and labor required;
(2) The novelty and difficulty of the questions;
(3) The skill requisite to perform the legal service properly;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The "undesirability" of the case;
(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

The Court weighs the § 330(a)(3) and *Johnson* factors as follows:

*§ 330(a)(3)(A): Time spent*. Counsel spent significantly more time on this case than is typical for a chapter 13 case in this district. The case was filed in January 2020 and confirmed in April 2020. During the representation, Counsel has billed about 78 hours, pre- and post-confirmation.

*§ 330(a)(3)(B): Rates charged*. Mr. Harris, Mr. Banning, and Ms. Stevenson are experienced, knowledgeable professionals. They billed $295, $200, and $150 per hour, respectively. Their rates are reasonable. However, the disclosure documents filed in this case show

that Counsel agreed to take this case on a flat fee arrangement, rather than to bill by the hour. The Court gathers that the disclosures were in error. If so, they should be fixed. The Court will require Counsel to file an amended disclosure and attach the engagement letter for this matter.

*§ 330(a)(3)(C): Necessary/beneficial*. In part, the work done was necessary and beneficial (see the discussion of *Johnson* factor 1 below).

*§ 330(a)(3)(D): Timeliness*. The work was largely timely. However, Counsel should have included Debtors' mortgage arrears in the Debtors' original and/or amended plan. Failure to do so was a significant omission. Also, Counsel should have notified TitleMax of Debtors' bankruptcy long before the claims bar date.

*§ 330(a)(3)(E): Skill/experience*. Messrs. Harris and Banning are experienced and skilled chapter 13 lawyers. Ms. Stevenson is an experienced and skilled bankruptcy paralegal.

*§ 330(a)(3)(F): Customary compensation in non-bankruptcy cases*. The rates charged are comparable to the rates of similarly experienced and skilled attorneys for nonbankruptcy work.

*Johnson factor ("JF") 1: Time and labor required?* Between the two fee applications, Counsel has requested a total of $17,539.89, including $15,611 in fees. This is about three times the average fee for a New Mexico chapter 13 case.

Several categories of work invite closer scrutiny. First, as noted supra, Counsel billed for noncompensable scheduling work.

Second, Debtors' mortgage arrears should have been treated in their initial plan, or at least prior to confirmation. Counsel billed 7.4 hours on work related to the postconfirmation modification of Debtors' plan to account for the arrearage. Only about an hour and a half of this time was spent drafting the motion to modify. The rest of the time was spent emailing Debtors, the

-9-
Case 20-10063-t13    Doc 67    Filed 05/14/21    Entered 05/14/21 14:23:58 Page 9 of 12

mortgage lender, and the trustee. Work on the mortgage arrears was late and the amount billed was high.

Third, it was never likely that Debtors' plan would pay creditors in full, especially given the $54,000 in mortgage arrears. The amount of time Counsel spent reviewing proofs of claims, pre-and post-confirmation, therefore was excessive.

Fourth, Counsel billed 6.3 hours corresponding with Debtors and Shellpoint after the loan was transferred. While some work might have been warranted, 6.3 hours seems high. An hour or two might have been reasonable.

Fifth, the 5.6 hours spent on TitleMax's claim seems high. Debtors' objection to TitleMax's claim amounts did not garner a response and was granted by default. Furthermore, if Counsel had notified TitleMax of the bankruptcy case in mid-February rather than March 20, 2020, there would have been no need to deal with a late-filed claim.

Finally, a portion of Counsel's expenses must be disallowed. Counsel requests, inter alia, noticing expense related to Debtors' motion to allow TitleMax's late-filed claim and Debtors' second motion to modify. Both these notices were necessitated by Counsel's delay, and the estate should not bear these costs.

*JF 2: Novelty and difficulty of the questions?* It does not appear that any of the legal issues addressed in this bankruptcy case were particularly novel or difficult.

*JF 3: Skill requisite to perform the legal service properly?* Counsel's professionals have the requisite skills.

*JF 4: Preclusion of other employment due to acceptance of the case?* There is no evidence that Counsel was precluded from other work by taking Debtors' bankruptcy case. Bankruptcy work in this district was in somewhat of a lull during the period in question.

-10-
Case 20-10063-t13    Doc 67    Filed 05/14/21    Entered 05/14/21 14:23:58 Page 10 of 12

*JF 5: Customary fee?* In this district, the customary fee to take a "typical" chapter 13 case through plan confirmation is about $5,000 in attorney and paralegal fees, plus costs and tax. Some post-confirmation work is needed in many cases (a motion to incur debt, for a plan moratorium, or the like), typically costing $1,000 or so. By any measure, Counsel's fee request here is too high, especially when coupled with the large amount billed for pre-confirmation work.

*JF 6: Whether the fee is fixed or contingent?* The fee is fixed. Counsel needs to clear up its disclosure about the nature of the fixed fee, however.

*JF 7: Time limitations imposed by the client or circumstances?* There was no significant time pressure in this case.

*JF 8: Amount involved and results obtained?* Claims filed totaled $512,049.69, including $396,196.85 in secured claims and $5,129 in priority tax claims. That is about average for a New Mexico chapter 13 case. Counsel obtained a good result for its client.

*JF 9: Experience, reputation, and ability of the attorneys?* Counsel's professionals are experienced and skilled in chapter 13 work.

*JF 10: Undesirability of the case?* There is no indication that this case was undesirable.

*JF 11: Nature and length of professional relationship with the client?* Not applicable.

*JF 12: Awards in similar cases?* As set out above, the attorney and paralegal fees charged for a "typical" chapter 13 case in this district are about $5,000 for pre-confirmation work. When needed, post-confirmation work typically is in the $1,000-$2,000 range.

Some post-confirmation legal work was required in this case. The Court concludes that it would be reasonable to allow fees of $3,000 in addition to the $10,323.95 of fees, taxes, and costs already allowed. Even reduced, the total fee is about $7,000-$8,000 higher than average for this

district. Taxes on fees will be reduced commensurately. Costs will be allowed in the amount of $135.93.

## Conclusion

Confirmation of a chapter 13 plan often does not end an attorney's relationship with his chapter 13 client, and post-confirmation fee applications are relatively common. Counsel is entitled to some compensation for work done on the TitleMax claim and the IRS secured claim, but not to fix the mortgage arrears problem. In addition, the time spent helping Debtors adjust to post-confirmation life cannot be fully compensated. The Court concludes that additional compensation of $3,000 in fees is reasonable, as are costs of $135.93. The Court will enter a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 14, 2021
Copies to: electronic notice recipients