UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ANGELITO UY SEPULVIDA
and MARIA BITUIN CARANAY,

Case No. 20-10063-ta13

Debtors.

## **OPINION**

Before the Court is the third fee application of Debtors' chapter 13 counsel, New Mexico Financial and Family Law, P.C. ("Counsel"). In the application, Counsel seeks allowance of $8,168[1] in professional fees, $134 in costs, and $640 in New Mexico gross receipts tax, for work done between November 2020 and July 2023 (the "third application period"). Counsel has previously billed $17,539 to the estate in this case, of which the Court has previously allowed $13,700. Adding the third application period fees, Counsel has billed about $26,500 to the estate in this chapter 13 case. The Court will allow fees for the third application period of $4,000, bringing the total of allowed fees, costs, and taxes to about $18,000.

1.  Facts.

The Court finds:[2]

In late 2019, Debtors retained Counsel to file this case. Debtors gave counsel a $3,000 retainer. From Counsel's office, attorneys Don Harris and Dennis Banning and paralegal Jill Stevenson worked on the case.

Counsel filed the case on January 13, 2020. The initial filings included the petition,

---

[1] All monetary amounts are rounded to the nearest dollar.
[2] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

disposable income calculation, schedules, statement of financial affairs, plan, credit counseling certificate, and attorney fee disclosure. The initial fee disclosure states that Counsel agreed to represent Debtors in this chapter 13 case for a flat fee of $3,000, with no retainer.[3]

Debtors' plan proposed 60 monthly payments of $1,000; proposed to pay Debtors' home mortgage "outside" the plan and three car loans "inside" the plan; and proposed to pay the IRS $12,963 as an unsecured priority claim. The plan provided that Debtors would keep all federal and state income tax refunds. On attorney fees, the plan provides: "Prepetition, Debtor's attorney was paid $3,000.00. Attorney estimates that additional, unpaid fees, costs, and taxes through confirmation will be about $0.00."[4] The plan did not address Debtor's $54,133 prepetition mortgage arrearage, although Counsel was aware of it.

The Debtors' § 341[5] meeting was held February 12, 2020. During the meeting, Debtors realized that their 2011 Mercedes secured a loan from TitleMax of New Mexico, Inc., not Bank of Albuquerque.[6] TitleMax was omitted from Debtors' initial schedules and had not received notice of the case.

The chapter 13 trustee objected to the plan, arguing that the proposed monthly payments were too low; that sections of the plan were left blank; that she needed tax returns; and that there was a discrepancy between Counsel's fee disclosure and the plan. The trustee also asserted that TitleMax needed to be notified of the bankruptcy and have its secured claim addressed in the

---

[3] The disclosure bears no resemblance to the fee agreement between the parties. It is a mystery how Counsel could certify that the disclosure "is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceedings."
[4] See footnote 3. Counsel's first postpetition fee bill, attached to the first fee application, showed an outstanding balance of $6,238.33 when the case was filed, so $3,000 in estimated fees through confirmation obviously was wrong.
[5] All statutory references are to 11 U.S.C. unless otherwise indicated.
[6] A separate Bank of Albuquerque loan is secured by a certificate of deposit.

plan.

Debtors filed an amended plan on February 26, 2020. The amended plan fixed the mix-up with TitleMax and Bank of Albuquerque; increased plan payments to $2,500 per month; turned over to the trustee the 2019-2023 federal and state income tax refunds; reduced TitleMax's interest rate from 120% to 5%; and treated the secured claim of Bank of Albuquerque (a loan collateralized by a certificate of deposit). The attorney fee paragraph was amended to state: "Prepetition, Debtor's attorney was paid $3,000.00. Attorney estimates that additional, unpaid fees, costs, and taxes through confirmation will be about $3,0000.00."[7] Inexplicably, the amended plan still did not address the pre-petition mortgage arrearage.

Debtors gave TitleMax notice of the bankruptcy case on March 20, 2020, more than five weeks after Counsel learned that TitleMax had a lien on one of Debtors' cars.

Counsel amended its disclosure of compensation on March 24, 2020. The amended disclosure still described the fee arrangement as a $3,000 flat fee but did disclose the prepetition retainer.[8]

The Debtors' amended plan was confirmed on April 6, 2020. The same day, the IRS filed a proof of claim, asserting a secured claim of $12,548[9] and an unsecured priority claim of $7,289. The IRS amended the proof of claim a week later to reduce its secured claim to $4,084 and its unsecured priority claim to $5,129. Both the original and amended proof of claim clearly

---

[7] See footnotes 3 and 4.
[8] See footnote 3 and 4. Disclosing the fee arrangement in a chapter 13 case is not difficult. Generally, chapter 13 counsel gets some type of retainer and bills the client by the hour at agreed-upon rates. The Court has no idea why Counsel was unable to make an accurate disclosure of its fee agreement.
[9] The proof of claim disclosed a tax lien on Debtors' real and personal property. Apparently, Debtors were unaware of the tax lien.

-3-
Case 20-10063-t13    Doc 122    Filed 10/20/23    Entered 10/20/23 13:56:54 Page 3 of 13

reserved all setoff rights.[10]

Counsel filed its first fee application on April 13, 2020, seeking approval of $9,175 of fees, $424 in costs, and $725 of taxes—a total of $10,324.[11]

Counsel's work continued after plan confirmation. During the second application period (April 13-November 7, 2020), Debtors moved to modify their plan to pay the secured portion ($4,084) of the IRS claim.[12] The modification was unopposed. The order granting the motion to modify, which was drafted and submitted by Counsel, erroneously states that the unsecured portion of IRS's claim is not a priority claim. It is.

Debtors filed a second motion to modify their plan on June 16, 2020, to correct the oversight of the prepetition mortgage arrears. In the motion, Debtors proposed to pay the $54,133 in arrears through the plan. Again, the modification was unopposed.

Counsel also worked on TitleMax's proof of claim. The trustee objected to the claim as untimely. Debtors responded with a motion to allow the late-filed claim, then filed their own objection to the claim. TitleMax did not respond to Debtors' objection, so the Court sustained it.

Counsel filed a second fee application on December 2, 2020, and amended it on January 12, 2021.[13] The second fee application asked for approval of an additional $6,437 in fees, costs, and tax. In an opinion and order entered May 14, 2021, the Court allowed Counsel's professional

---

[10] The proof of claim states in part: "The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful."

[11] The initial fee application was lacking. While the application is for services performed between October 29, 2019, and April 11, 2020, Counsel only included time billed on or after January 10, 2020.

[12] The IRS filed proof of claim on April 6, 2020. Instead of a $12,963 unsecured priority claim, which is what Debtors expected, the IRS asserted a secured claim of $4,085 and a priority claim of $5,129.

[13] The amendment sought to explain why the first and second fee applications were so high.

fees of $3,000. The Court found that the total fees approved in the first and second applications for payment were much higher than average for this district, even after disallowing some of the fees requested in the second application.

Now, Counsel seeks approval of an additional $8,942 of fees, costs, and taxes. As with the first fee application, some of the invoices were missing. Counsel supplied the missing invoices after the Court asked for them.

During the third application period the following occurred:

- The IRS set off Debtors' 2019 federal income tax refund ($8,464) against IRS's priority and secured claim;

- Debtors modified their plan a third time so they could keep their 2020 federal and state income tax refunds to pay for unanticipated expenses;

- The mortgagee filed, but later withdrew, a motion for relief from stay for failure to make payments per the plan;

- The trustee filed, but later withdrew, a motion to dismiss the case for failure to make plan payments, primarily the 2019 federal tax refund amount; and

- Debtors modified their plan a fourth time to address the IRS setoff of the 2019 tax refund and Debtor's $2,500 delinquency in plan payments. The modification also allowed Debtors to surrender a car to the secured creditor.

As currently amended, Debtors' amended and much modified plan pays a substantial dividend to general unsecured creditors. The more Counsel is paid, however, the less the general unsecured creditors get. As a corollary, paying Counsel more does not cost Debtors more.

The hours spent and the professional fees billed during the third application period can be categorized as follows:

| Category | Attorney time | Paralegal time | Combined fees |
|---|---|---|---|
| Routine dealing with mortgage co. | 2.7 | | $540 |
| Case administration | 2.1 | .5 | $495 |
| Fee applications | 1.4 | 2.0 | $713 |
| HOA dues dispute | 1.2 | | $240 |
| Client consultation | 12.3 | | $2,460 |
| IRS offset | 2.8 | | $560 |
| Mortgagee stay relief motion | 5.9 | | $1,180 |
| Clerical | 2.0 | | $400 |
| Trustee motion to dismiss | 1.7 | | $340 |
| Third plan modification | 1.6 | | $320 |
| Fourth plan modification | 4.1 | | $820 |
| BMW surrender | .5 | | $100 |
| Total | <u>38.3</u> hours | <u>2.5</u> hours | <u>$8,168</u> |

2. <u>General Requirements for Debtor Attorney Fee Allowance in Chapter 13</u>.

Compensation of counsel for chapter 13 debtors is governed by § 330(a)(4)(B),[14] which provides:

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

This subsection was added to the bankruptcy code by the Bankruptcy Reform Act of 1994.[15]

"[A] chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) [disclosure of] compensation paid or agreed to be paid pursuant to section 329 and 2) . . . approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Rosales,* 621 B.R. 903, 922 (Bankr. D. Kan. 2020), quoting *In re Gorski,* 519 B.R. 67, 71 (Bankr. S.D.N.Y. 2014).

---

[14] This is true for work done pre- or post-confirmation. *See*, *e.g.*, *In re Conner*, 559 B.R. 526, 533 (Bankr. D.N.M. 2016) (awarding supplemental fees pursuant to § 330(a)).

[15] The Reform Act also deleted the language "or to the debtor's attorney" from § 330(a)(1). Until then, § 330(a)(1) had included the debtor's attorney in the list of persons who could be paid from the estate. In *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004), the Supreme Court held that the Reform Act meant that debtor's counsel in a chapter 12 or 13 case could only be compensated under § 330(a)(4)(B).

Compensation generally can include reimbursement of expenses advanced, e.g., filing fees, witness fees, and deposition costs. *See, e.g., In re Riley*, 923 F.3d 433, 443 (5th Cir. 2019); *In re Genatossio*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015) (§ 330(a)(4)(B) permits an award of fees and expenses).

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *In re Cooke,* 2020 WL 6821730, at *3 (Bankr. D. Ariz.), citing *In re Roderick Timber Co.,* 185 B.R. 601, 606 (9th Cir. BAP 1995). "This burden is not to be taken lightly given that every dollar expended on legal fees results i[n] a dollar less that is available for distribution to the creditors." *Dille*, 2021 WL 864201, at *2, citing *In re Ulrich,* 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014) *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (same); *In re Hotel Assoc., Inc.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981) (same).

3.  Determining How Much Compensation Should be Allowed.

"To be compensable, the fees must be for services that were 'actual' and 'necessary.' § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be 'reasonable.'" *In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.); *see also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (to the same effect); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005) (discussing the "reasonableness" requirement).

a.  Actual Services. Compensation can only be allowed for services actually performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered"). This is

not an issue here.

  b.  <u>Necessary Services</u>. Allowance is limited to "services [that] were necessary to the administration of, or beneficial toward the completion of a case." *In re Schupbach Investments, LLC*, 521 B.R. 449, at *8 (10th Cir. BAP 2014) (unpublished); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same). In chapter 13 cases, the benefit can be to the debtor rather than to the estate. *See, e.g., In re Guajardo*, 2020 WL 4919794, at *3 (Bankr. D.N.M.); *In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) is an exception to the general rule that professionals' services must benefit the estate to be compensable); *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002) (same). However, to be compensable, the representation of the debtor must be "in connection with the bankruptcy case." § 330(a)(4)(B).

  Some of the work done by Counsel during the third application period was not necessary for the benefit of the estate or Debtors in connection with the bankruptcy case. For example, the work done on the HOA dues dispute was not necessary. Debtors could and should have sorted it out themselves. Similarly, the routine dealings with the mortgage company should have been done by Debtors, not Counsel. Likewise, not all the time Debtors and Counsel spent in consultation was necessary.

  Clerical work is not compensable as a "necessary" service rendered by a professional person seeking allowance of fees under § 330(a). *See, e.g., In re Guajardo*, 2020 WL 762828, at *4 (Bankr. D.N.M.) ("While necessary in every legal proceeding, clerical work cannot reasonably be passed onto clients or the estate and should instead be absorbed by the firm as overhead."); *In re CF&I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991) (same); *In re Lady Baltimore Foods, Inc.*, 2004 WL 2192368, at *1 (Bankr. D. Utah) (clerical tasks are not compensable); *In re Guzman*, 2009 WL 607401, at *1 (Bankr. D.N.M.) (same).

Counsel billed 2.0 hours at $200/hour trying to coordinate calls and meetings. Time spent on these clerical tasks is not compensable. If Counsel's attorneys choose to do their own scheduling of client meetings, Zoom calls, and the like, they must not bill for it.

Finally, work done to correct mistakes is not considered necessary. *See, e.g., In re Wheeler*, 439 B.R. 107, 110-11 (Bankr. E.D. Mich. 2010) (the time spent making the mistake is unnecessary and noncompensable or, in the alternative, the time spent correcting the mistake is unnecessary and noncompensable); *In re Redington*, 2018 WL 6444387, at *6 (Bankr. D.N.J.) (citing and following *Wheeler*); *In re Yogi*, 2014 WL 3749553, at *2 (Bankr. D. Haw.) ("when an attorney makes a mistake, the attorney should bear the cost of fixing it, not the client or the bankruptcy estate"); *In re Southworth*, 2023 WL 3185407, at *11 (Bankr. N.D.N.Y.) ("the court should not allow compensation for work that was unreasonable or was avoidable through reasonable precaution and foresight"). Counsel made some mistakes it had to fix. First, it could not get its attorney fee disclosure right, either in the plan, amended plan, or the first two tries at the disclosure of compensation form. Second, Counsel did not address the substantial prepetition mortgage arrearage in the confirmed plan. Catching up on mortgage arrearages is a cornerstone of almost every chapter 13 plan where there is a home mortgage in default. Third, Counsel should have anticipated that the IRS would set off the 2019 tax refund against the prepetition debt, especially after the IRS preserved its setoff rights in its proof of claim. A lot of time was spent dealing with the problem that arose because Debtors promised the refund to the chapter 13 trustee but could not deliver. Fourth, Counsel did not properly serve the amended plan and the notice of deadline to object thereto. *See* NM LBR 3015-2(e).[16] Fifth, it does not appear that Counsel properly served any of the motions to modify the confirmed plan, nor the attendant

---

[16] It is possible that the amended plan and notice were mailed to creditors, and Counsel's certificate of service is wrong. If so, Counsel should file amended certificate of service.

notices of deadlines to object thereto. *See* Fed. R. Bankr. P. 3015(h). Counsel should decide what steps to take to remedy the due process problems created by this failure of notice.

      c.      <u>Reasonable Compensation</u>. Finally, compensation for actual and necessary services must be reasonable. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the factors in § 330(a)(3) and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246–47 (10th Cir. 2013). Under § 330(a)(3) the Court must consider:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *Johnson* factors are:

> (1) The time and labor required;
> (2) The novelty and difficulty of the questions;
> (3) The skill requisite to perform the legal service properly;
> (4) The preclusion of other employment by the attorney due to acceptance of the case;
> (5) The customary fee;
> (6) Whether the fee is fixed or contingent;
> (7) Time limitations imposed by the client or the circumstances;
> (8) The amount involved and the results obtained;
> (9) The experience, reputation, and ability of the attorneys;
> (10) The "undesirability" of the case;
> (11) The nature and length of the professional relationship with the client; and
> (12) Awards in similar cases.

488 F.2d at 717-19. For the third fee application, the Court weighs the § 330(a)(3) and *Johnson* factors as follows:

| Factor | Discussion |
| --- | --- |
| § 330(a)(3)(A): Time spent | Counsel spent significantly more time on this case than is typical for a chapter 13 case in this district. During the representation, Counsel has billed about 118 hours, pre- and post-confirmation. A typical case takes about 30-35 hours from start to finish. |
| § 330(a)(3)(B): Rates charged | Mr. Harris, Mr. Banning, and Ms. Stevenson are experienced, knowledgeable professionals. They billed $295, $200, and $150 per hour, respectively. Their rates are reasonable. |
| § 330(a)(3)(C): Necessary/beneficial | In part, the work performed was necessary and beneficial. As discussed above, however, some of the work was unnecessary. |
| § 330(a)(3)(D): Timeliness | The work was timely. |
| § 330(a)(3)(E): Skill/experience | Mr. Harris and Mr. Banning are experienced chapter 13 lawyers. Ms. Stevenson is an experienced bankruptcy paralegal. |
| § 330(a)(3)(F): Customary compensation in non-bankruptcy cases | The rates charged are comparable to the rates of similarly experienced and skilled attorneys for nonbankruptcy work. |
| *Johnson* factor ("JF") 1: Time and labor required? | See the discussion in section d below. |
| JF 2: Novelty and difficulty of the questions? | It does not appear that any of the legal issues addressed in this bankruptcy case were particularly novel or difficult. |
| JF 3: Skill requisite to perform the legal service properly? | Counsel's professionals have the requisite skills. |
| JF 4: Preclusion of other employment due to acceptance of the case? | There is no evidence that the Debtors' bankruptcy case precluded Counsel from other work. Bankruptcy work in this district has been in a lull during the period in question. |
| JF 5: Customary fee? | In this district, the customary fee to take a "typical" chapter 13 case through plan confirmation is about $5,000-$6,000 in attorney and paralegal fees, plus costs and tax. Some post-confirmation work is needed in many cases (a plan modification, surrendering a vehicle, mortgage issues, tax issues, etc.), typically costing $1,000-$2,000. By any reasonable measure, Counsel's fees in this case, and during the third application period, are much higher than the fees customarily charged for similar cases. |
| JF 6: Whether the fee is fixed or contingent? | The hourly rates charged by Counsel were fixed. |
| JF 7: Time limitations imposed by the client or circumstances? | There were no significant time limitations in this case. |

| | |
|---|---|
| JF 8: Amount involved and results obtained? | For the third application period, Counsel had to address the IRS offset, the stay relief motion, the motion to dismiss, and Debtors' unanticipated expenses. They did so successfully, although the time spent dealing with the IRS offset and the motion to dismiss could have been avoided by better handling of the IRS claim. |
| JF 9: Experience, reputation, and ability of the consultant? | Counsel's professionals are experienced in chapter 13 work. |
| JF 10: Undesirability of the case? | There is no indication that this case was undesirable. |
| JF 11: Nature and length of professional relationship with the client? | Not applicable. |
| JF 12: Awards in similar cases? | As set out above, the attorney and paralegal fees charged for a "typical" chapter 13 case in this district are about $5,000-$6,000 for pre-confirmation work. Post-confirmation work typically is in the $1,000-$2,000 range. |

        d.       <u>Time and Labor required; JF Factor 1</u>. Counsel billed over 41 hours of attorney and paralegal time for work done in the third application period. There are a number of reasons why the fees got so high. First, as discussed above, some of the charged services were not necessary for the estate or Debtors in connection with the case. Second, although some client consultation was necessary, the amount of time spent in client consultation was excessive. Third, Counsel could have spent less time on the stay relief motion. Counsel's response to the motion was short and to the point—Debtors had in fact made the monthly payments at issue. Attached to the response was evidence of the payments. Counsel should have let the mortgage servicer figure the rest out for itself (which it eventually did).[17] Fourth, Counsel bills .2 hours for reviewing most docket entries, court filings, and email correspondence. Individually, each entry could be reasonable. Together, the entries result in high fee bills.

        The normal strong check on excessive attorney fees, i.e., a client who has to come out of pocket to pay the fee bills, is absent in this case. Under their chapter 13 plan, Debtors do not

---

[17] Counsel billed some time drafting a motion to strike the stay relief motion. Drafting a motion to strike a creditor motion is not good practice, no matter how weak the motion. *See* Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(f).

have to pay more if Counsel does more work. Instead, general unsecured creditors get paid less. That is a significant reason why the Court is now wrestling with $26,500 in billed attorney fees, costs, and taxes in this relatively straightforward case. If Debtors had had to write checks every month for the billed attorney fees, in addition to making their monthly plan payments, they likely would have found ways to significantly reduce the attorney fees.

Some legal work was necessary for the third application period. Weighing the § 330(a)(3) and the *Johnson* factors, the Court concludes that $4,000 is reasonable compensation for the actual and necessary professional services rendered to Debtors in this period. The allowed fees, costs, and taxes for the third application period will make this an $18,000 case, so far, with more than a year to go. Even reduced, the total fees are very high.

## Conclusion

Confirmation of a chapter 13 plan does not end an attorney's relationship with his chapter 13 client; post-confirmation work typically is needed. Where, as here, allowed attorney fees are taken from funds that otherwise would be paid to general unsecured creditors, the Court is often the only check against excessive fees. There is little to relish in this task, but it must be done.

The Court concludes that additional compensation of $4,000 in fees is reasonable, as are costs of $133.52. The Court will enter a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 20, 2023
Copies to: electronic notice recipients